Good morning. May it please the Court, Charles Bonneau appearing for Appellant Alan Hassan. Your Honours, the issue before the Court today has to do with the Sixth Amendment right to jury trial and the role played by jury unanimity in guaranteeing that right. The United States Supreme Court has permitted states to depart from the traditional 12-member jury, but it has never permitted the states to render a verdict based on a non-unanimous jury. In other words, if there are 6 or 9 or 12 members of the jury, they have to be unanimous with each other. Now, in order to guarantee that the jury verdict is unanimous, the courts, the state and federal courts, have a limited perspective. We cannot go and ask the jurors what they thought, how they voted, what evidence they relied upon. Can I backtrack for a moment to the first point? So we said in Garcia-Rivera that an appellant has the right to a unanimous jury verdict under Article III, but the Supreme Court has never said that. In fact, has indicated to the contrary. So how can we get to the AEDPA analysis given that ruling? I think the Court in Richardson v. United States and in Shad v. Arizona has said that, has given examples, and I know there's one opinion by Justice Scalia that takes an exaggerated example, an assault on Monday, an embezzlement on Tuesday, something like that. You have to be unanimous about what you're talking about. Those are exaggerated examples. This case gets closer to the core of the unanimity requirement, which the high court has talked about and which Garcia-Rivera adopted and integrated as the high court in Panetti v. Quatermain said was appropriate for the Ninth, for the circuit courts to do. In other words, there's a general principle, jury unanimity. How is that to be enforced? And it's to be enforced through jury instructions where appropriate.  Well, it was not unanimous because it was not based on a common understanding of what assault had occurred. Counsel, Judge Gould, could I ask you a question just to clarify this? Could the jury here, you had 12 jurors, right? Right. Now, could this verdict have been rendered with four of the jurors thinking there was an assault because an appellant grabbed the cop's badge, but not otherwise, projecting any other theory? And could four of them have thought there was an assault because appellant, when he waved his arm around, banged it into the officer? And could four of them have thought there was an assault on either of those first two, but there was an assault when appellant in handcuffs elbowed the officer? I mean, could this jury have been unanimous, but with focusing on different events that are separate? They could have done that, and that's our concern. However, I add the concern that it's not grabbing the badge so much as pointing at the badge. And the prosecutor made it very clear that that was the first of several assaults that he was relying upon, that pointing at the badge. He mentioned Sergeant Warren's testimony that once you invade the personal space of the officer by pointing, that that's, that then the officer has a right to take you down. In other words, the officer has been assaulted. And he went on to argue that after there was an objection. He returned to the subject and said, even given the defendant's version of events. But wait. What the prosecutor said was, I contend that based on the defendant's own admission that he was that close to the officer's badge that even on his story indicating Sergeant Warren told you that, I mean, that's an ambiguity. What's he talking about? He's talking about. But what, I mean, it's not clear. It's not like he said, just pointing at the badge is an assault. The defendant testified that he only pointed at the badge, that he did not grab or touch the badge. The prosecutor started out in what you just quoted as saying that given that testimony, he committed an assault based on the opinion of Sergeant Warren. Now, what the. He doesn't get that out. He just says, I contend based on the defendant's own admission, even on his story indicating what Sergeant Warren told you, and then that's it. I mean. No, that's not it. It was. That is. I don't know what the Court's looking at, but the district court cut off the argument. Actually, the defendant did. I mean, the defense counsel jumped up and objected, and then the prosecution moved on. He didn't move on. He. I'll quote exactly. I quote. This is after, down the page. I'm talking RT-806. It's quoted at page 56 of my opening brief, and if you look at page 27 of the excerpt of record, you'll see the district court leaves this out, and I don't know why they did, but after the court interjected, we have, quote, even given the defendant's version of events, he committed these crimes. So in other words, he's relying on the pointing. There's an objection. The court says something about it's, you know, go back and look at the instructions. It's late in the day. And the district attorney then returns and says, even given the defendant's version of events, he committed these crimes. That may not be in the package before the court. But it's a long. It's almost a page long. Yes. And I don't think it's necessary. The last word is an argument of counsel. I mean, we instruct the jury typically that the statements of counsel are not to be entitled to any evidentiary weight. The problem the court has here is in deciding which of these versions has weight. In other words, the attorney's version does not have weight. You rely on the instructions. You don't rely on what counsel says. Well, this is enough. We have expert testimony that once you invade the personal space, in quotes, of the officer, the officer has a right to take you down. Building on that, the prosecutor argued that that pointing, as Dr. Hassan described it, that that was necessary. I understand that. But the jury relies on the jury instructions, presumptively, don't they? The jury instructions are less than clear on this. They say that an assault occurs if the defendant does something, the natural and probable consequences of which may be an unconsented touching. So given that language embroidered by Sergeant Warren's testimony, the door was open for the prosecutor to argue this. And there was plenty of substance to that argument. Some of the jurors may have been guided by it. It was within the instructions. It was objected to. It was wrong. But it was used. And ‑‑ If I may, just going back to Richardson and Shad, where the Supreme Court gives some instructions about how the jury doesn't have to unanimously decide which of several sets of underlying brute facts make up a particular element. And if you recall Judge Gould's question, he was going through these various means of commission, as the Supreme Court says in Shad. Now, even if we don't think that these really are the brute facts, how could we say that the state court's determination that they were was objectively unreasonable in light of the language in Richardson and Shad v. Ryan? The state court says that this was ‑‑ said that this was a continuous transaction. That was an unreasonable interpretation of the facts. This, the way we have described it, the way Judge Gould described it, these were three separate assaults that could have been charged in three counts. He could have been charged with three counts of assault. And, in fact, the prosecutor ticked them off, one, two, three. We've got three assaults here. You can choose one, or you can mix and match them. And that's not ‑‑ he didn't say that, but that's what the jury was left with. They were not left with a unanimity requirement. And there was evidence in separate defenses which could have weighted these equally in the minds of different jurors. That defeats unanimity. And how do you distinguish that from, like, the example, I think it was in Shad, where he says one juror thinks he was killed with a knife and the other one thinks it was with a gun and it doesn't really make a difference. I mean, that also seems quite separate. Yes. Now, there's a recent case from this circuit, Hofus, that I have cited to the court where the question was an attempt. And what was the substantial action that was undertaken by the defendant? That's an element of one offense. And it could have been getting a knife. It could have been getting a gun. Those are different means of committing one offense. Here, that's not our case. This is three separate assaults, not different means of committing one assault. Okay. You're correct. Thank you. Counsel, I have one quick question. It's really by way of curiosity, because I didn't see this in briefs, but I thought that the police in this State involved had cameras in the cars so that there should have been a video of what happened between the doctor and the police officer. Is that not true, that they didn't have a video, or was it just not? It seems to me there was some reference that it wasn't working, but at any rate, it didn't come into evidence at all. Thank you. Thank you. Thank you. Good morning. May it please the Court. Justin Riley on behalf of the Warden. With regard to unanimity, the Supreme Court has never squarely established that unanimity instructions need be given, squarely established. There is the example that they give that was not part of the holding in Richardson that described an event where there was a gun on a certain day and a knife on a different day. If for some reason that case did squarely establish something, it did not squarely establish a framework for relief in this case, especially because the State court found, as a matter of State law, that this was a continuing transaction or occurrence. Counsel, Judge Gould, I have two questions. One, hasn't the Supreme Court squarely established that there has to be fundamental fairness in a criminal trial as a matter of due process? There is the requirement for fundamental fairness, yes. Okay. Then, you know, if four jurors could think he did an assault by swinging his arm but not otherwise, and four could think he did an assault while in handcuffs by elbowing the policeman, and four could think he did it by touching the badge or something, you know, isn't that unfair that no — you don't have a majority of the jury finding that he did an assault offense? It's not fundamental. In the case with — someone did a murder, but we don't know which weapon. Was it this or that? There's only one murder. The guy dies one — because of one event. But here, it seemed — you know, I might be missing something, but it seemed to me there were three separate assaults.  that there is a fundamental unfairness in this sort of case. I don't think that's the case. There are actually three reasons why that sort of analysis would not make this case fundamentally unfair. The first is the United States Supreme Court has never clearly established the fact that the lack of a unanimity instruction can cause fundamental unfairness in this sort of situation. That's the first problem. The second problem is that the State courts found that even if the jurors — even if four jurors had found three different of the acts as you described to be the underlying facts of the offense, the State court found as a matter of State law that that was one occurrence under State law. We can't review that here. And then third and finally, the reason that that is not fundamentally unfair is because the appellant had no problem with the jury instructions as given in this case. He was not compelled to undergo a trial in which there was no unanimity instruction. He consented to the jury instructions as given. And without compulsion, you can't have fundamental unfairness as I've described in my brief at the first argument. I'd love to answer any more questions on unanimity if there are any. I'm going to go briefly to the instructional error claim. The jury was properly instructed, and nobody's arguing to the contrary, that the jury was properly instructed as to the elements of assault here. The alleged misstatement of the law by the prosecutor was merely argument. And as in every case, every prosecutor at the end stands up and says, I think the facts that I've given you satisfy the laws the judge has given you. And in every case, the prosecutor does that. And not in every case is the prosecutor correct. But here, the prosecutor made the very same argument all prosecutors do at the end of every case. And the jury was also correctly instructed that the attorney's argument is merely that argument. It's not evidence, and it's not the law. And the jury was specifically instructed here that the judge's own words as to the law would be the final word. And if the judge's instruction as to the law differed from the attorney's description of the law, the attorney's words as to the law was to be ignored. For those reasons, there was no instructional error as well. I'd love to answer any other questions on any of the other topics. Thank you. Well, it seems to me overall, counsel, it's pretty steep consequences for a traffic stop. And, you know, I guess I have a question in the back of my mind. Why the charges got pushed up higher? Like it was initially written up as resisting arrest, not as a violent assault. And then after Dr. Hassan claimed his brutality, higher charges were asserted, and eventually he was convicted. But why is it that the charge increased in the course of the initial stop to the point where the charges were all asserted? And why is it that there's no video of what happened between the officer and the doctor? As to your first comment, this would be very steep consequences for a traffic stop. But this wasn't just a traffic stop. This was the appellant assaulting an officer. And actually, I think he got off pretty light. I don't think he did much jail time, if any. I believe it was just probation. As to your second point, the charge initially, the officer wrote it up as he thought the case should be charged. He arrested and booked the defendant on various charges. But then the prosecutor obviously has discretion later to come along and look at the facts and say, you know what? This is what I can prove. And this is what I think the defendant did. And so the prosecutor coming along and amending charges after the police gives his belief of what the facts support is quite commonplace, I believe. And as to the final point, I have no independent knowledge of the video. I did read in the record at several places that there was a malfunction as to some sort of tape. But I don't know if the car was equipped with video or whether or not it was working that day. I do know that the record does not contain any video. Okay. And the reason this doctor, he's in his 60s, right? When this stop occurs, I think he's in his 60s and he's taking a break at a halftime of a basketball game. Yes. He's going, heading home to check some lab report. Yes. And the traffic stop occurs. And one thing leads to another. But. I guess what I'm having trouble with is. Is it you? You said the prosecutor has discretion to up to up the ante with the charges. Well, how did the doctor end up with his ribs like ribs broken? Would he got taken down? Yeah.  I don't. Obviously, that wasn't part of the criminal trial. But right. As a punishment anyway. But it's part of the factual background. Yes. And the story on that is that the officer, the officer fell on him or something. I believe that is true. And the fact that this occurs. When was this traffic stop? What was the date of it? It was in 2001, right? Wasn't it after the September 11th? I believe I did read that it was pretty close in time to the September 11th events. So. OK. And the prosecution. Well, never mind. I understand your position. I'm just troubled by this case. And I don't know if on this record there's anything that can or should be done about it. But there's an awful lot that looks like like possible police overreacting with some discrimination against the doctor with with Arab names. Thank you. Thank you. Thank you. I submit it. Thank you. You're actually out of time, but we'll give you another minute. Thank you. We think that the matters that Judge Gould just set forth are intimately connected to the unanimity question. We think that the jury had the same misgivings and was split two or three ways because of these very factors. On the record, it doesn't show that your client objected to the jury instructions. He did not object to the jury instructions. But doesn't he have to do that to reserve that for appellate review? No. The California law is clear that this is a sua sponte objection. The state has tried to inject a federal procedure that would lead the court off into plain error and some other things that just don't exist in California. We have a sua sponte duty. This is a fully exhausted claim. Thank you. Thank you. Okay. The case of Hassan v. Morazinski is submitted.
judges: Mahan, Hall, Gould